**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARLENE GRUDKOWSKI, Individually and

on behalf of a Class of Similarly Situated

Persons,

      Plaintiff,

        v.

FOREMOST INSURANCE COMPANY,

     Defendant.

CIVIL ACTION NO. 3:CV-12-1847

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Foremost Insurance Company's ("Foremost") Motion to Dismiss the First Amended Class Action Complaint (Doc. 17) filed by Arlene Grudkowski ("Grudkowski") on behalf of herself and a class of similarly situated individuals. Grudkowski alleges that she purchased automobile insurance for her antique and classic vehicles from Foremost which purports to provide stacked uninsured and underinsured motorist coverages. In actuality, however, Grudkowski contends that the policies only provide unstacked coverages. As a result, Grudkowski claims that Foremost breached the terms of the parties' insurance contracts, violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, was unjustly enriched, and violated Pennsylvania's bad faith statute. Foremost has moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Grudkowski has failed to state a claim upon which relief can be granted, the motion to dismiss will be granted and the First Amended Class Action Complaint will be dismissed.

## I. Background

The facts as alleged in the First Amended Class Action Complaint are as follows:

Beginning in January 2007, Foremost issued a Modified Auto Collectors Program Auto Policy Classic (the "Classic Policy") to Grudkowski providing coverage for a 1991 BMW

318i. (*First Am. Compl.*, ¶ 5.) The Classic Policy provided $300,000.00 in combined single limit stacked uninsured motorist coverage. (*Id*. at ¶ 7.) The Classic Policy also provided $300,000.00 in combined single limit stacked underinsured motorist coverage. (*Id*. at ¶ 8.)

Additionally, beginning in April 2007, Foremost issued an Antique and Classic Auto Policy (the "Antique Policy") to Grudkowski providing coverage for a 1972 Mercedes 280 SEL. (*Id*. at ¶ 9.) The Antique Policy provided $300,000.00 in combined single limit stacked uninsured motorist coverage, as well as $300,000.00 in combined single limit stacked underinsured motorist coverage. (*Id*. at ¶¶ 11-12.)

In addition to the Classic and Antique Policies, Grudkowski maintained a personal auto policy issued by the Erie Insurance Exchange for the personal vehicles in her household other than the antique and classic autos. (*Id*. at ¶ 13.)

Under the Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFRL"), 75 Pa. Cons. Stat. Ann. §§ 1701, *et seq*., insureds may waive stacking of uninsured and underinsured motorist coverages. (*Id*. at ¶¶ 14-15.) Stacking, which may be either intra-policy or inter-policy, is the cumulation of coverages under auto policies in order to make available a greater pool of recovery of uninsured and underinsured motorist benefits. (*Id*. at ¶¶ 16-19.) The MVFRL presumes that stacking applies unless insureds waive stacking by executing a stacking waiver containing the language provided in 75 Pa. Cons. Stat. Ann. § 1738(d). (*Id*. at ¶ 20.)

Grudkowski and all persons who purchased stacked uninsured and/or underinsured motorist coverages from Foremost under classic and/or antique policies were provided with written waivers. Yet, none of these individuals executed the forms necessary to reject stacked coverages. (*Id*. at ¶¶ 24-25.) Grudkowski, and all persons similarly situated, relied on Foremost's representation that they would receive stacked uninsured and underinsured coverages so long as the waivers were not signed. (*Id*. at ¶ 27.)

2

Under the Classic Policy, Grudkowski elected stacked uninsured and underinsured motorist coverages. (*Id*. at ¶¶ 28, 30.)  All premiums were paid for such coverages. (*Id*. at ¶¶ 29, 31.)  As only one vehicle was insured under the Classic Policy, the only stacking benefit available was inter-policy stacking. (*Id*. at ¶ 36.)

Grudkowski also elected stacked uninsured and underinsured motorist coverages under the Antique Policy. (*Id*. at ¶¶ 32, 34.)  Grudkowski paid all premiums for such coverages. (*Id*. at ¶¶ 33, 35.)  The only stacking benefit available under the Antique Policy was inter-policy stacking because Grudkowski insured only one vehicle under the policy. (*Id*. at ¶ 37.)

The Classic and Antique Policies contain the following provision with regard to recovery of inter-policy stacked uninsured motorist benefits:

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this endorsement:

The following priorities of recovery apply:

**First**        The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

**Second**     The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority.  The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

If we are the insurer against whom the claim is first made, we will pay, subject to the limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage, after we and all other contributing insurers agree:

1.      Whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle", and

2.      As to the amount of damages.

(*Id.* at ¶¶ 39, 43.)

The policies contain a similar provision with respect to recovery of inter-policy stacked underinsured motorist benefits:

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this endorsement:

The following priorities of recovery apply:

**First**    The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

**Second**    The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

If we are the insurer against whom the claim is first made, we will pay, subject to the limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage, after we and all other contributing insurers agree:

1.    Whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle", and

2.    As to the amount of damages.

(*Id.* at ¶¶ 40, 44.)

Despite these provisions which purport to provide inter-policy stacking benefits, the Classic Policy and Antique Policy contain specific provisions which limit, and essentially eliminate, inter-policy stacking. (*Id.* at ¶ 48.) With respect to uninsured motorists benefits, the policies state:

**INSURING AGREEMENT**

A.    We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motorist vehicle" because of "bodily injury":

1.    Sustained by an "insured"; and

4

2.      Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motorist vehicle"

. . .

B.      "Insured" as used in this endorsement means:

1.      You, any "family member" and any other person "occupying" "your covered auto". . . .

(*Id*. at ¶¶ 49, 51.)  As to underinsured motorist benefits, the policies provide:

**INSURING AGREEMENT**

A.      We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motorist vehicle" because of "bodily injury":

1.      Sustained by an "insured"; and

2.      Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motorist vehicle"

. . .

B.      "Insured" as used in this endorsement means:

1.      You, any "family member" and any other person "occupying" "your covered auto". . . .

(*Id*. at ¶¶ 50, 52.)

Based on these provisions, in order to recover uninsured or underinsured benefits under either the Classic Policy or Antique Policy, Grudkowski, her husband, and her daughter must be occupants of the auto insured under the policy. (*Id*. at ¶¶ 53-54.)  Since they must be occupants of the insured auto, there can never be any inter-policy stacking benefits available under the Classic Policy or Antique Policy. (*Id*. at ¶¶ 55-56.)

The definition of "insured" under the policies renders the promise of stacked uninsured and underinsured benefits illusory, despite the representation that the policies conferred such benefits. (*Id*. at ¶¶ 59-62.)  As a result, the policies covering only one vehicle purport to confer a coverage benefit "which the policies do not, in fact, provide." (*Id*. at ¶ 61.)

5

Grudkowski was deprived of the benefits of stacked coverages, leaving her with an inferior and less valuable insurance policy than was represented as being provided. (*Id*. at ¶¶ 63-65.)

As a result, Grudkowski commenced this action on behalf of herself and similarly situated individuals asserting claims for breach of contract (Count I), violation of the Unfair Trade Practices and Consumer Protection Law (Count II), unjust enrichment (Count III), and statutory bad faith (Count IV). Foremost, on November 9, 2012, moved to dismiss the First Amended Class Action Complaint in its entirety. As the period for briefing has expired, and following argument on the motion on February 21, 2013, the motion to dismiss is now ripe for disposition.

## II. Discussion

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to

relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 677, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were

not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## B.      Breach of Contract (Count I)

To state a breach of contract claim under Pennsylvania law, Grudkowski must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976)).

Foremost argues that the breach of contract claim fails as a matter of law because Grudkowski does not allege that the insurance contracts obligated it to provide stacked uninsured and underinsured coverages.  Rather, Foremost asserts that Grudkowski admits in the First Amended Class Action Complaint that stacked benefits are not, in fact, provided by the policies. (*First Am. Compl.*, ¶ 61.)  Thus, Foremost concludes that Grudkowski has failed to state a breach of a contractually imposed duty.

Grudkowski argues that the First Amended Class Action Complaint is replete with factual allegations that Foremost promised to provide stacked benefits and then refused despite regularly accepting her premiums.  Grudkowski further contends that Foremost "promised in its declarations page that it was providing stacked UM and UIM coverages, but, instead, in a classic bait and switch move, used inserted contract terms to only provide non-stacked coverages."  As a result, Grudkowski argues that she set forth sufficient allegations to withstand a motion to dismiss the breach of contract claim.

In its brief, Foremost cites decisions by the Pennsylvania Superior Court and the United States District Court for the Eastern District of Pennsylvania which suggest that insurers may, as a matter of Pennsylvania insurance law, lawfully limit the stacking of uninsured and underinsured coverages under antique automobile policies.  In *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 29 (Pa. Super. 1993) (en banc), the insured

sustained severe personal injuries after being involved in a "hit and run" while operating a vehicle owned and insured by his employer. The insured maintained a special antique vehicle policy with the insurer covering a single antique automobile. *See id*. After the uninsured motorist benefits available under the employer's policy were exhausted, the insured sought recovery under the antique policy. *See id*. The insurer commenced the action arguing that uninsured motorist benefits were not recoverable under the policy because the insured was not operating the antique automobile at the time the injuries were sustained. *See id*.

Based on its review of the insurance contract, the MVFRL, and applicable case law, the Superior Court concluded that the trial judge erred in denying the insurer's petition for declaratory and injunctive relief. *See id*. at 30. The court noted that "the proper focus regarding issues of coverage under insurance contracts is the reasonable expectations of the insured." *Id*. (citing *Dibble v. Security of America Life Ins. Co.*, 590 A.2d 352, 354 (Pa. Super. 1991)). And, while reasonable expectations of the insured are the focal point in interpreting the contractual language of insurance policies, "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Id*. (citing *Neil v. Allstate Ins. Co.*, 549 A.2d 1304) (Pa. Super. 1988)).

Applying these principles, the court concluded that the "policy at issue is clear and unambiguous; it limits coverage to antique automobile activities." *Id*. at 30. The Superior Court recognized that an antique automobile policy "must be distinguished from an ordinary policy covering a personal use automobile. The antique automobile insurance policy is not designed to provide UM benefits to a covered person in a hit and run accident unless the uninsured motor vehicle hits the antique auto." *Id*. at 32. The court further emphasized that the significantly reduced premiums charged for the uninsured motorist coverage under the antique policy prevented the insured from reasonably expecting coverage when he was not operating the antique automobile. *See id*.

Moreover, the *Corbett* court found that restricted coverage under the antique policy was not "contrary to public policy or the intent of the MVFRL." *Id*. The court reasoned that

9

a restriction in coverage did not undermine the MVFRL because:

> in order to reduce the costs of insurance, the Legislature must have intended to maintain different classifications of insurance such as the antique auto policy in this case. The policy that Corbett purchased is a special insurance policy designed specifically for antique and collector automobiles. The very limited use of antique automobiles does not subject them to the normal exposure or danger from uninsured motorists. These vehicles are seldom driven on highways for fear of wear and tear or breakdown. In fact, owners of antique automobiles often have their antique cars transported on flatbed trucks. Because of the decreased risks associated with antique vehicles, premiums for these special insurance policies are lower than those for personal automobile policies. To invalidate the restrictions found in the policy would force insurance companies to raise rates on antique automobile policies to account for the attendant increased risks. If coverage is permitted under the circumstances presented here, the distinctions between antique automobile insurance and other types of insurance will be eradicated and premiums for antique vehicle insurance will be on par with personal automobile insurance. This result was not contemplated by the Legislature in enacting the MVFRL.

> Finally, the fact that Pennsylvania provides for special registration plates and fees for antique automobiles and proscribes certain uses of such vehicles also illustrates the Legislature's intent to maintain distinct classifications of automobiles. Different classifications of automobiles have different insurance needs. In this case, the antique policy issued to Corbett was not meant to compensate the insured or a covered person in an accident involving an uninsured motor vehicle unless that uninsured motor vehicle hits the antique car. Based on the foregoing, we do not find that this definition of "uninsured motor vehicle" in the insurance agreement offends public policy.

*Id*. at 32-33 (internal citations omitted).

Similarly, in *St. Paul Mercury Ins. Co. v. Perry*, 227 F. Supp. 2d 430, 432 (E.D. Pa. 2002), the insurer issued an antique automobile policy to the insureds. After one of the insureds sustained injuries in an accident in their personal automobile and they exhausted their uninsured motorist benefits under their personal policy, they made a claim under the antique policy. *See id*. The insurer then initiated the action seeking a declaratory judgment that it was not liable to the insureds for uninsured motorist benefits. *See id*.

The district court granted the insurer's motion for summary judgment, relying on the Superior Court's analysis in *Corbett*. *See id*. at 434-35. The district court noted that the policy issued to the insureds was designed to cover only a limited use automobile. *See id*. And, like the policy at issue in *Corbett*, the insureds "paid dramatically lower premiums for UM coverage of their antique automobile than they did for their regularly used vehicles." *Id*. at 435. Thus, affording the "plain and unambiguous language" of the policy "its clear

meaning," the district court held that the insureds were not entitled to uninsured motorist benefits under the terms of the antique automobile policy. *Id*.

And, in *St. Paul Mercury Ins. Co. v. Mittan*, No. 01-5372, 2002 WL 31928446, at *1 (E.D. Pa. Dec. 21, 2002), the insurer issued an antique automobile policy covering two vehicles. Thereafter, the insured was injured in an automobile accident. *See id*. The insured was not operating either antique vehicle at the time of the accident. *See id*. The insurer commenced the action after the insured made a claim for benefits under the antique policy. The insurer ultimately moved for summary judgment and a declaration that it was not required to provide underinsured motorist coverage under the antique automobile policy. *See id*.

The district court, after reviewing the applicable terms of the policy, concluded that the policy was designed to cover only a limited use antique automobile. *See id*. at *3. Because the policy was clear and unambiguous, the district court held that the insured was not entitled to recover underinsured motorist benefits under the terms of the policy. *See id*. at *5. In addition, the district court noted that "UIM coverage can be limited to clear and unambiguous policy limitations," and that "the Pennsylvania Insurance Department has indeed approved language that limits UM/UIM protection to only those situations where the insured is injured while occupying the antique automobile in the specific framework of antique automobile policies." *Id*. (citing *Corbett*, 630 A.2d at 30; *Scheidly v. St. Paul Mercury Ins. Co.*, No. 99-1669, 1999 WL 619339, at *1 (E.D. Pa. Aug. 16, 1999)).

*Corbett*, *Perry*, and *Mittan* persuasively support the proposition that an insurer, as a matter of law, may sell antique automobile insurance policies in Pennsylvania which do not allow for the stacking of coverages.[1] Indeed, the similarities between the policies at

---

[1]     Grudkowski argues that since these cases are not binding authority, they need not be followed in this case. While this is true, intermediate state appellate court decisions are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1293-94 (3d Cir. 1994). Moreover, a federal court may "give serious consideration to the opinion of an intermediate

issue here and those at issue in *Corbett* and *Perry* indicate that the policies sold by Foremost complied with Pennsylvania law. Here, like in *Corbett* and *Perry*, the insurer sold antique automobile policies which covered only a single antique automobile. In *Corbett* and *Perry*, inter-policy stacking of coverages was not possible because the clear terms of the policies restricted recovery to only those losses suffered while occupying the covered antique vehicles. The policies in this case required Grudkowski, by way of the definition of an "insured", to be occupying the covered antique automobile in order to receive uninsured or underinsured benefits. (*First Am. Compl.*, ¶¶ 49-52.).[2] This prevented the inter-policy stacking of coverages, a fact acknowledged by Grudkowski. (*Id.* at ¶ 61.) Thus, just as the Superior Court determined in *Corbett* and Judge Baylson found in *Perry*, I conclude that the antique automobile policies sold by Foremost complied with the MVFRL. And, because Foremost lawfully sold antique automobile policies that do not allow for inter-policy stacking, it is not plausible that Foremost breached a contractual duty when it did not provide stacked coverages.

Moreover, a finding that Grudkowski failed to state that Foremost breached its contractual obligations is consistent with the *Corbett* court's analysis of the unique characteristics of antique automobile insurance. The policies at issue in this case are issued to serve functions distinct from that of personal automobile policies, which is what

---

appellate court" when attempting to predict how the Pennsylvania Supreme Court would handle the issue. *See Holmes v. Kimko Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). And, a decision of another district judge may be found persuasive even though it is not binding precedent. *See, e.g., Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 312 (D. Del. 2000) ("while the opinion of one district judge may be found to be persuasive, it is not binding on another district judge.").

[2]  In *Benner v. Foremost Ins. Grp.*, No. 07-5029, 2008 WL 3984162, at *3-4 (E.D. Pa. Aug. 26, 2008), the district court evaluated the definition of "insured" in an insurance policy that is the same as in the policies in this case. The *Benner* court concluded that the definition properly limited coverage to accidents involving the covered antique automobiles. *See id.*

allows insurers to charge lower premiums for antique automobile policies. (*First Am. Compl.*, Exs. A-G.)  If Foremost was found to have a contractual duty to provide stacked benefits as argued by Grudkowski, "the distinctions between antique automobile and other types of insurance will be eradicated," causing a drastic increase in premiums for this type of insurance. *Corbett*, 630 A.2d at 33.  Such a result, as detailed by the *Corbett* court, would be contrary to public policy and the intent of the MVFRL.

At most, Grudkowski alleges that the policies at issue should impose a duty on Foremost to provide inter-policy stacked coverages.  But, based on the terms of the policies set forth in the First Amended Class Action Complaint, Foremost was not contractually obligated to provide stacked coverages.  Simply put, the antique automobile insurance policies in this case contain lawful coverage limitations, which Foremost is alleged to have complied with when it did not provide stacked coverages.  Grudkowski's allegations are therefore insufficient to state a breach of contract claim.

## C.  Unfair Trade Practices and Consumer Protection Law (Count II)

In Count II of the First Amended Class Action Complaint, Grudkowski seeks to recover for Foremost's deceptive conduct when it allegedly misrepresented the type of uninsured and underinsured coverages available to insureds in a single vehicle policy in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201–1, *et seq*. ("UTPCPL").  The UTPCPL allows private actions by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss . . . to recover actual damages . . . . " 73 Pa. Stat. Ann. § 201–9.2.  Section 201-3 of the UTPCPL makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful."

The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices, and the statute is the principal means for doing so in the Commonwealth. *Pirozzi v. Penske Olds Cadillac-GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. 1992).  In order to state a claim under the UTPCPL, a plaintiff must allege one of the "unfair

or deceptive practices" set forth in 73 Pa. Stat. Ann. § 201-2(4)(i)-(xxi). *Feeney v. Disston Maner Pers. Care Home, Inc.*, 849 A.2d 590, 597 (Pa. Super. 2004) (citing 73 Pa. Stat. Ann. § 201-3; *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027 (Pa. Super. 2001)).  In particular, Grudkowski contends that Foremost violated the following UTPCPL provisions:

> (v) Representing that goods or services have . . . characteristics, ingredients, uses, benefits or quantities that they do not have . . .;
>
> . . . .
>
> (vii) Representing that goods or services are of a particular standard, quality or grade . . . if they are of another;
>
> . . . .
>
> (ix) Advertising goods or services with intent not to sell them as advertised;
>
> . . . .
>
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> . . . .
>
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
>
> . . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 202-2(4).

To set forth a cause of action under section 201-2(4)(v), "a plaintiff must establish that a defendant's representation is false, that it actually deceives or has a tendency to deceive and that the representation is likely to make a difference in the purchasing decision." *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. 1999) (citing *DiLucido v. Terminix Int'l Inc.*, 676 A.2d 1237, 1240-1241 (Pa. Super. 1996), *appeal denied*, 546 Pa. 655, 684 A.2d 557 (1996)).  To state a claim for deceptive conduct under the catch-all provision, section 201-2(4)(xxi), a plaintiff must satisfy three elements:

> First, a plaintiff must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he

> justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct. Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss.

*Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (quoting *Seldon v. Home Loan Serv., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa.2009)).

Foremost argues that accepting the facts as alleged in the First Amended Class Action Complaint as true, the allegations fail to convert an otherwise lawful coverage limitation into a UTPCPL violation. Grudkowski contends that the pertinent inquiry with regard to the UTPCPL claim is not if the restriction in the policies is lawful, but, instead, whether an insurer may misrepresent the coverages being provided under an insurance policy by selling non-stacked coverages labeled as stacked coverages.

In support of its motion to dismiss, Foremost argues that the Pennsylvania Superior Court has previously found that allegations such as those asserted by Grudkowski are insufficient to state a UTPCPL claim against an insurer. In *Fay v. Erie Ins. Grp.*, 732 A.2d 712, 713 (Pa. Super. 1999), the appellee issued two automobile insurance policies to the appellant and her husband. *See id*. at 713. Pursuant to the coverages purchased by the appellant, her and her husband were charged for and paid premiums for three accidental death benefits. *See id*. But, the policies expressly precluded the stacking of first party benefits. The policies also stated that no individual was entitled to recover duplicate benefits under the policies or other similar insurance policies. *See id*. After the appellant's husband died in an automobile accident, the action was commenced as a class action for violations of the UTPCPL. *See id*.

The insurer filed preliminary objections to the complaint, and the trial court sustained the objections. *Id*. at 715. On appeal, the appellant argued that the appellee "implicitly misrepresented the value of the accidental death benefits by offering and charging premiums for multiple benefits when it knew that the insureds would be entitled to only one recovery in the event of a claim under the policy." *Id*. at 714-15. In affirming the trial court's decision, the Superior Court reasoned that the terms of the policy were clear, and, if the

appellant and her husband were confused about the terms of the policy, "it was incumbent upon them to have questioned this practice at the time the policy was issued." *Id*. at 715. The Superior Court also noted that the "Appellant concede[d] that the policy did not misrepresent the stacking of first party benefits and asserts that she is not seeking to stack the accidental death benefits." *Id*. The Superior Court concluded that the appellant failed to state a claim under section 201-2(4)(v) of the UTPCPL because to "the extent that any misrepresentations regarding the value of the benefits can be inferred from the fact that premiums were charged and collected thereon, it was corrected by the other provisions of the policy which clearly and unambiguously prohibit the stacking of first party benefits for the same loss." *Id*. Moreover, the insured failed to state that she relied on the misrepresentations of the insurer or that she suffered a loss as a result of her reliance on the insurer. *Id*. Thus, the Superior Court found that the insured failed to set forth a cause of action under the UTPCPL. *Id*. The Superior Court concluded its decision by noting that:

> In reaching this result, we are not unmindful of the fact that the insurer's practice of offering and collecting premiums for duplicative benefits that cannot be collected may appear to be unfair. However, motor vehicle insurance is a matter that is heavily regulated by both statute and the Insurance Commissioner. The policy here complied with the MVFRL and Appellee is entitled to charge premiums, the rates of which are approved by the Insurance Commissioner, for first party benefits requested by its insureds. If Appellant deems the practice objectionable, her remedy is to bring this matter to the attention of the legislature or the Insurance Commissioner rather than to seek a judicial solution. Finding that Appellant is not entitled to any relief, we affirm.

*Id*.

Foremost's motion to dismiss the UTPCPL claim will be granted. As discussed above, and for the reasons explained in detail in *Corbett*, the restricted coverage under the antique automobile policies in this case is not contrary to public policy or the intent of the MVFRL. By selling insurance policies which contain clear, lawful coverage limitations, Grudkowski has failed to sufficiently allege that Foremost engaged in conduct in violation of the UTPCPL.

Furthermore, the similarities between this action and *Fay* demonstrate that Grudkowski has not stated a UTPCPL claim. Like the policies in *Fay*, to the extent that any

16

ambiguity existed with regard to the scope of the benefits provided under the policies, it was "corrected" by the clear definition of an "insured" under the policies. And, just as the plaintiff in *Fay* acknowledged that the policy did not misrepresent the inability to stack benefits, Grudkowski has stated that the policies limit uninsured and underinsured coverages to injuries sustained in the covered antique automobiles. (*First Am. Compl.*, ¶ 61.) While it may seem somewhat unfair that premiums were paid for unrecoverable benefits, Foremost, like the insurer in *Fay*, complied with the MVFRL and charged premiums approved by the Insurance Commissioner. On these facts, and as *Fay* instructs, Grudkowski's remedy lies with the legislature or Insurance Commissioner. The UTPCPL claim will be dismissed.

## D.    Unjust Enrichment (Count III)

Foremost seeks dismissal of the unjust enrichment claim, Count III of the First Amended Class Action Complaint, because the existing insurance contracts govern the parties' relationship, thus preventing recovery under an unjust enrichment theory. In opposition, Grudkowski argues that breach of contract and unjust enrichment claims may be pled in the alternative under the Federal Rules of Civil Procedure. Plaintiff cites *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007), for the proposition that, at the motion to dismiss stage, a plaintiff's "claim for unjust enrichment is an appropriate alternative avenue for relief for the plaintiff to seek in the event no valid contract existed between [the parties]."

The elements of an unjust enrichment claim "are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Braun v. Wal–Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. 2011) (internal quotation marks omitted). However, "'the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement or express contract.'" *Leder v. Shinfeld*, 609 F. Supp. 2d 386, 408 (E.D. Pa. 2009) (quoting *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006)); *Montanez*, 876 F. Supp. 2d at 515 ("Pennsylvania has long ascribed to the rule that

when the parties' relationship is based on an express written contract no unjust enrichment recovery is permitted."). Courts, therefore, "typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." *Montanez*, 876 F. Supp. 2d at 516. Where there is no dispute over the existence and validity of the contractual relationship between the parties, it is proper to dismiss an unjust enrichment claim at the motion to dismiss stage. *See, e.g., Ray Angelini, Inc. v. SEC BESD Solar One, LLC*, No. 11-1093, 2011 WL 5869906, at *3 (M.D. Pa. Nov. 21, 2011)

Here, while Grudkowski alleges that there is a dispute as to her allegations of illusory coverage and that she paid for benefits that she could not receive under the policies, there is no dispute over the existence and validity of the insurance contracts in this action. Thus:

> While unjust enrichment claims and contract claims can be pleaded as alternative theories in the event that no valid contract existed between the parties, the existence and validity of the Agreements is not in dispute in this case. Discovery is not necessary to determine whether a valid and enforceable contract exists between the [parties], because [Foremost] ha[s] conceded the existence and binding nature of the Agreements.

*Ray Angelini*, 2011 WL 5869906, at *3. The unjust enrichment claim will be dismissed.

## E.    Statutory Bad Faith (Count IV)

Lastly, Foremost seeks dismissal of the statutory bad faith claim. Foremost argues that the bad faith statute applies only to those actions an insurer takes in performance of its contractual obligations of defense and indemnification or for payment of a loss. Since Grudkowski's claim is not premised on any such conduct by Foremost, Foremost insists that the claim fails as a matter of law. In opposition, Grudkowski contends that all forms of insurance bad faith fall within the purview of section 8371, and conduct does not morph into bad faith only upon denial of a claim. Thus, Grudkowski surmises that "as long as the claim arises under an insurance policy, Plaintiff can maintain a claim under Section 8371."

The bad faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat Ann. § 8371. "Bad faith" is a term of art referring to "the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first party claim context." *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 41, 928 A.2d 186, 199 (2007). To recover under the statute, "the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). There are a few limited areas where courts have extended statutory bad faith beyond the mere denial of claims. But, these cases all relate to the specific conduct of the insurer following the issuance of the policy. *See Mitch's Auto Serv. Ctr., Inc. v. State Auto Mut. Ins. Co.*, No. 10-3413, 2011 WL 5042480, at *7 (E.D. Pa. Oct. 24, 2011) ((citing *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 317–18 (3d Cir. 2003) (bad faith actionable for failing to follow internal guidelines); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (Pa. Super. 2002) (bad faith actionable for failing to follow Nationwide's Pennsylvania Best Claims Practice Manual); *O'Donnell ex rel. Mitro v. Allstate Ins.*, 734 A.2d 901, 906 (Pa. Super. 1999) (bad faith may occur from litigation misconduct); *Liberty Mut. Ins. Co. v. Marty's Exp., Inc.*, 910 F. Supp. 221 (E.D. Pa. 1996) (extending bad faith to insurer's rating and collecting of premiums in accordance with retrospective policy)).

Grudkowski asserts that misrepresenting coverage in an insurance policy, such as she claims here, may constitute bad faith under Section 8371. Her argument, however, is largely similar to that rejected by the Pennsylvania Supreme Court in *Toy*. In *Toy*, the Court analyzed the text and scope of the bad faith statute. *See Toy*, 593 Pa. at 34, 928 A.2d at 195. The appellant argued that "the Legislature did not articulate the reach of a bad faith

19

claim under § 8371, and intended the statute to remedy any act that is prohibited to insurers under Pennsylvania's common or statutory law. Thus, Toy argues, if an insured alleges that an insurer violated a provision of the UIPA, as she has, the insured necessarily states a bad faith claim under § 8371." 593 Pa. at 35, 928 A.2d at 195. The Court disagreed with this construction of the bad faith statute.[3] Rather, based on common law developments that occurred prior to the enactment of the bad faith statute, the Court reasoned that:

> when, § 8371 provides a remedy in an action "arising under an insurance policy" as to a claim an insured has made of his insurer, is read with this meaning of bad faith in mind, we can only conclude on the question before us, that the words of the statute are clear and explicit, and that the Legislature intended not to give relief under the bad faith statute to an insured who alleges that his insurer engaged in unfair or deceptive practices in soliciting the purchase of a policy.

593 Pa. at 42, 928 A.2d at 200.

Grudkowski argues that *Toy* is inapplicable to the present matter. According to Grudkowski, *Toy* involved deceptive or unfair conduct by the insurer in soliciting the insured to purchase the policy. This case, she contends, presents a different scenario because the misrepresentations were made in the policies, when the policies were in full force and effect, and not simply during the solicitation of the insured to purchase the policies.

Grudkowski's argument is unpersuasive. At its core, Grudkowski's bad faith claim rests on the allegation that Foremost intentionally issued a policy containing unlawful or inherently contradictory provisions. Restated, she alleges that the policies purport to provide stacked uninsured and underinsured benefits, but that these benefits are eliminated by the definition of an "insured" under the policies. Just as the alleged deceitful solicitation in *Toy* occurred prior to the execution of the insurance policy, Grudkowski alleges Foremost

---

[3]     Accordingly, *Toy* rejects Grudkowski's argument that allegations of violations of the Unfair Insurance Practices Act ("UIPA") are sufficient to state a statutory bad faith claim. *See Toy*, 593 Pa. at 35, 928 A.2d at 195 ("Toy argues, if an insured alleges that an insurer violated a provision of the UIPA, as she has, the insured necessarily states a bad faith claim under § 8371. We disagree.").

engaged in pre-contract formation bad faith. The bad faith claim, therefore, is not related to Foremost's performance of its contractual obligations of defense and indemnification or payment of a loss. *See Toy*, 593 Pa. at 41, 928 A.2d at 199. And, as noted by the Justice Eakin in *Toy*, "§ 8371 cannot extend to claims relating to the conduct of insurers before the formation of an insurance contract." 593 Pa. at 61, 928 A.2d at 212 (Eakin, J., concurring); *see also The Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 930 (Pa. Super. 2004) ("Neither *O'Donnell* nor any other case interpreting § 8371 extends that section's protection to conduct preceding the execution of insurance coverage."). At most, Grudkowski alleges that Foremost engaged in bad faith conduct by drafting a contradictory or unlawful policy of insurance, a claim which both this Court and the United States District Court for the Eastern District of Pennsylvania have recently noted has yet to be recognized by any court applying Pennsylvania law. *See Sewell v. Liberty Life Ins. Co.*, No. 11-1721, 2012 WL 1424879, at *4-5 (M.D. Pa. Apr. 25, 2012); *Mitch's Auto*, 2011 WL 5042480, at *7.[4]

The other authority relied on by Grudkowski fails to demonstrate that a bad faith claim can be based on the facts as alleged in the First Amended Class Action Complaint. For example, in *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1181 (Pa. Super. 2007), the plaintiffs claimed "bad faith with respect to two claims submitted under their

---

[4]    In *Sewell*, I did not "foreclose the possibility that a bad faith claim could be established if an insurer engaged in the practice of intentionally issuing insurance policies in direct contravention of Pennsylvania's statutory requirements." But, since the plaintiff failed to state that the insurer intentionally violated Pennsylvania law, it was unnecessary to resolve whether Pennsylvania courts would recognize such a claim. *See Sewell*, 2012 WL 1424879, at *5 n.5. Grudkowski, unlike the plaintiff in *Sewell*, has alleged such conduct. *Compare Sewell*, 2012 WL 1424879, at *5. Yet, she has failed to point to any case finding a claim for the drafting or issuing of a contradictory or allegedly unlawful policy of insurance to be actionable as a statutory bad faith claim under Pennsylvania law. Thus, "the Court declines to extend statutory bad faith to territory where neither the Pennsylvania legislature nor its courts have gone before." *Mitch's Auto*, 2011 WL 5042480, at *7.

homeowners' insurance policy." The Pennsylvania Superior Court noted that a bad faith claim is not necessarily restricted to the denial of an insurance claim, but it may also encompass the insurer's investigative practices. *See id*. at 1187. *Greene* supports Foremost's claim that an insurer's bad faith must relate to the insurer's conduct in responding to an insurance claim.

*Bukofski v. USAA Cas. Ins. Co.*, No. 08-1779, 2009 WL 1609402, at *4 (M.D. Pa. June 9, 2009) is likewise inapposite to the instant matter, as it is factually distinguishable from this case. In *Bukofski*, the plaintiff contended that the insurer unilaterally removed an arbitration provision from an insurance policy twenty-five years after it had been issued. The court found that a statutory bad faith claim might be established if the plaintiff was able to demonstrate that the provision was removed to force favorable settlements of claims. *See id*. at *5. In the instant matter, however, Grudkowski has not alleged that the policy was altered, modified, or changed at some point following its initial issuance.

Similarly, in *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500 (Pa. Super. 2004), the Superior Court noted that "the bad faith statute extends to the handling of UIM claims." While the *Brown* court acknowledged that bad faith encompasses "a wide variety of objectionable conduct," the examples of objectionable conduct cited by the court involved action taken by an insurer in responding to a claim, such as denying benefits, investigating a claim, and failing to communicate with the claimant. *See id*. at 500-01. Likewise, in *O'Donnell*, the Superior Court reiterated that a bad faith claim may extend to the insurer's investigative practices, as well as its conduct before, during or after litigation is commenced against it. *See O'Donnell*, 734 A.2d at 906. And, in *Hollock v. Erie Ins. Exch*., 842 A.2d 409, 411-12 (Pa. Super. 2004), the plaintiff alleged that the insurer misrepresented the amount of available coverage to the insured after the insured provided notice of the insurance claim to the insurer. The *Hollock* court described the claim as seeking "recovery based upon

22

Erie's bad faith conduct in relation to payment under the insurance contract." *Id*. at 416. *Brown*, *O'Donnell*, and *Hollock* all demonstrate that viable statutory bad faith claims implicate the handling of insurance claims.

Based on the foregoing, Grudkowski has not presented any persuasive authority to support her argument that a bad faith claim is plausible under the facts as alleged in this case. The bad faith claim will therefore be dismissed.

## F.    Leave to Amend

Grudkowski will not be permitted to amend the First Amended Class Action Complaint. Although the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, a court need not grant leave to amend if amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Because the antique automobile policies sold by Foremost complied with Pennsylvania law and did not obligate it to provide stacked coverages under the terms of the policies, amendment of the breach of contract and UTPCPL claims would be futile. Similarly, since the facts and circumstances of this case would not support recovery on the statutory bad faith or unjust enrichment claims, amendment of these claims would also be futile. Therefore, the First Amended Class Action Complaint will be dismissed with prejudice.

## III. Conclusion

For the above stated reasons, Foremost's motion to dismiss the First Amended Class Action Complaint will be granted.

An appropriate order follows.

March 5, 2013                                         /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                             United States District Judge