# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARLENE GRUDKOWSKI, Individually and on behalf of a Class of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>FOREMOST INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 3:CV-12-1847<br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court is Plaintiff Arlene Grudkowski's ("Grudkowski") Motion for Reconsideration (Doc. 41) of the Court's March 5, 2013 Memorandum and Order which granted Defendant Foremost Insurance Company's ("Foremost") motion to dismiss the First Amended Class Action Complaint. Because Grudkowski fails to demonstrate that reconsideration of the March 5, 2013 Memorandum and Order is warranted, her motion will be denied.

## I. Background

As set forth in greater detail in the March 5, 2013 Memorandum, Grudkowski filed the First Amended Class Action Complaint in this action on behalf of herself and similarly situated individuals on October 26, 2012, (Doc. 16), asserting claims for breach of contract (Count I), violation of the Unfair Trade Practices and Consumer Protection Law (Count II), unjust enrichment (Count III), and statutory bad faith (Count IV). *See Grudkowski v. Foremost Ins. Co.*, No. 12-1847, 2013 WL 816666, at *4 (M.D. Pa. Mar. 5, 2013). Grudkowski's allegations relate to her claim that she purchased automobile insurance for her antique and classic vehicles from Foremost which purported to provide stacked uninsured and underinsured motorist coverages. In actuality, however, Grudkowski contends that the policies only provided unstacked coverages. *See id.* at *1.

On November 9, 2012, Foremost filed a motion to dismiss the First Amended Class Action Complaint in its entirety. (Doc. 17.) Oral argument was held on the motion on February 21, 2013. Thereafter, Foremost's motion to dismiss was granted, and the First Amended Class Action Complaint was dismissed with prejudice. *See Grudkowski*, 2013 WL 816666, at *16.

With respect to the breach of contract claim in Count I, I concluded that the allegations in the First Amended Class Action Complaint failed to state a claim upon which relief could be granted. *See id*. at *9. In making this determination, I relied on *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 29 (Pa. Super. 1993) (en banc), *St. Paul Mercury Ins. Co. v. Perry*, 227 F. Supp. 2d 430, 432 (E.D. Pa. 2002), and *St. Paul Mercury Ins. Co. v. Mittan*, No. 01-5372, 2002 WL 31928446, at *1 (E.D. Pa. Dec. 21, 2002), which supported "the proposition that an insurer, as a matter of law, may sell antique automobile insurance policies in Pennsylvania which do not allow for the stacking of coverages." *Grudkowski*, 2013 WL 816666, at *6-8. As a result, I found that "the antique automobile polices sold by Foremost complied with the [Pennsylvania Motor Vehicle Financial Responsibility Law] ("MVFRL")." And, since the insurance policies did not provide for inter-policy stacking, I concluded that Grudkowski could not state a claim that Foremost breached a contractual duty when it did not provide stacked coverages. *See id*. at *8.

As to the claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201–1, *et seq*. ("UTPCPL"), I found that the policies sold by Foremost contained clear, lawful coverage limitations. As a result, I concluded that Grudkowski failed to allege that Foremost engaged in conduct in violation of the UTPCPL. *Grudkowski*, 2013 WL 816666, at *9-11. In dismissing the claim, I relied on *Fay v. Erie Ins. Grp.*, 723 A.2d 712 (Pa. Super. 1999) to support my conclusion that Grudkowski's "remedy lies with the legislature or Insurance Commissioner." *Grudkowski*, 2013 WL 816666, at *10-12.

Grudkowski's unjust enrichment claim was also dismissed. Specifically, I reasoned that as the existence and validity of the parties' insurance contracts were not in dispute,

Grudkowski could not recover on an unjust enrichment claim. *See id*. at *13.

Grudkowski's final claim, statutory bad faith under 42 Pa. Cons. Stat. Ann. § 8371, was dismissed as well. *See id*. Since Grudkowkski's bad faith claim was "not related to Foremost's performance of its contractual obligations of defense and indemnification or payment of a loss," I held that Grudkowski failed to state a statutory bad faith claim under Pennsylvania law. *See id*. at *14 (citing *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 41, 928 A.2d 186, 199 (2007)).

Lastly, I denied Grudkowski the opportunity to further amend the First Amended Class Action Complaint. *See id*. at *16. Specifically, because amendment of the breach of contract, UTPCPL, statutory bad faith, and unjust enrichment claims would be futile, I dismissed the First Amended Class Action Complaint with prejudice. *See id*.

On March 18, 2013, Grudkowski filed a motion for reconsideration of the March 5, 2013 Memorandum and Order granting Foremost's motion to dismiss. The main points raised in Grudkowski's brief in support of her motion for reconsideration are: (1) the Court failed to recognize or understand the development, the historical context, and the statutory framework of the MVFRL, 75 Pa. C.S.A. §§ 1701, *et seq*.; (2) the Court erred in relying on *Corbett*; (3) *Corbett, Perry, and Mittan* were wrongly decided and have no precedential value to this case; (4) Foremost assumed a duty to provide stacked coverage and the Court erred in relying on *Fay* to dismiss the UTPCPL claim; and (5) *Toy* does not compel dismissal of the statutory bad faith claim. (Doc. 42.)

Foremost filed its brief in opposition to Grudkowski's motion on April 18, 2013, (Doc. 50), and Grudkowski's reply brief in support of her motion was filed on May 6, 2013. (Doc.51.) The motion for reconsideration is now ripe for disposition.

## II. Legal Standard

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight (28) days of entry. Fed. R. Civ. P. 59(e). Alternatively, when the reconsideration motion is not to amend or alter the judgment pursuant to Rule 59, Middle District of Pennsylvania

3

Local Rule 7.10 allows a party to seek reconsideration within fourteen (14) days of entry of an order. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05 1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

### III. Discussion

As set forth above, Grudkowski seeks reconsideration of my application of *Corbett* and its progeny to the policies at issue, as well as the dismissal of her UTPCPL and statutory bad faith claims. Because the UTPCPL and statutory bad faith claims can be disposed of in similar fashion, they will be addressed first. Thereafter, I will address Grudkowski's claim that I erred in relying on *Corbett* and its progeny to hold that the antique automobile policies sold by Foremost complied with the MVFRL.

**A.   The UTPCPL and Statutory Bad Faith Claims**

Grudkowski's request for reconsideration of the dismissal of the UTPCPL and statutory bad faith claims will be denied. Here, the arguments Grudkowski advances in

4

seeking reconsideration have all previously been argued and disposed of, as she attempts to relitigate points of disagreement regarding the dismissal of these claims.

As to the UTPCPL claim, Grudkowski is again advancing the argument that by issuing allegedly illusory insurance coverage, Foremost violated the UTPCPL. Similarly, with respect to *Fay*, Grudkowski restates the same arguments that I previously found unpersuasive. Accordingly, reconsideration of the dismissal of the UTPCPL claim is not warranted.

Grudkowski also asserts the same arguments previously raised in seeking reconsideration of the statutory bad faith claim. As with her brief in opposition to Foremost's motion to dismiss, Grudkowski attempts to distinguish *Toy*. These arguments, however, have all been addressed and rejected. And, because there is no need to correct a clear error of fact or law that occurred in dismissing the statutory bad faith claim, Grudkowski's request for reconsideration of the dismissal of the section 8371 claim will be denied.

**B.**     ***Corbett* and its Progeny**

Unlike Grudkowski's request for reconsideration of the dismissal of the UTPCPL and statutory bad faith claims which is based on the same arguments already put forth in this action, her claims that I misapplied the MVFRL and improperly relied *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28 (Pa. Super. 1993) (en banc) are premised on arguments not previously presented in this litigation. Grudkowski contends that "the Court failed to recognize or understand the development, the historical context, and the statutory framework" of the MVFRL. (Doc. 42, 1.) She also raises, among others, the following arguments: (1) "Corbett is factually and legally distinct from the present case," (*Id*. at 6); (2) "the rationale of Corbett retained no vitality after the Act 6 Amendments to the MVFRL," (*Id*. at 10); and (3) in *Perry* and *Mittan* "neither Judge Baylson nor Judge Rufe addressed the critical issues pertinent to the post-Act 6 statute." (*Id*. at 11.) Characterizing these

arguments as "new," Foremost urges that I decline to consider them on the merits because they are being presented for the first time on a reconsideration motion. Grudkowski, however, disputes that these are newly raised arguments.

Grudkowski's motion, as noted, is largely based on her request that I reconsider the meaning and vitality of *Corbett* and its progeny. According to the "Table of Authorities" to Grudkowski's brief in support of her motion for reconsideration, *Corbett* is cited on fourteen different pages. (Doc. 42, ii.) Grudkowski's brief in support of her motion for reconsideration refers to *Corbett* no less than eighty times. Similarly, *Perry* and *Mittan* are referenced on six pages. And, both *Perry* and *Mittan* appear in the "Table of Authorities" to the brief in support of Grudkowski's motion. (Doc. 42, ii.)

Before Grudkowski's First Amended Class Action Complaint was dismissed, she had the opportunity to present substantive arguments regarding the MVFRL and to distinguish and/or discredit *Corbett*, *Perry*, and *Mittan*. In her brief in opposition to Foremost's motion to dismiss, however, despite the fact that Foremost's brief in support spent six pages (approximately twenty-five percent of its brief) discussing *Corbett* and its progeny, (Doc. 20, 6-12), Grudkowski did not address these cases. In fact, in Grudkowski's opposition brief, citations to *Corbett*, *Perry*, and *Mittan* do not appear in the attached "Table of Authorities," *Perry* and *Mittan* were not discussed in the brief, and *Corbett* was referred to once- in a footnote. (Doc. 26.) The *entirety* of Grudkowski's discussion of *Corbett* provided:

> It is worth noting that some Pennsylvania federal courts have refused to follow Corbett. See, e.g., Quinney v. American Modern Home Ins. Co., 145 F. Supp. 2d 603, 608 (M.D. Pa. 2011) (Caputo, J.); Zurich Ins. Co. v. Lobach, Civil A. No. 97-3281, 1997 U.S. Dist. LEXIS 11709, at *8-*9 (E.D. Pa. Aug. 5, 1997).

(Doc. 26, 16 n.3.)

Oral argument was also held on Foremost's motion to dismiss. At oral argument, Grudkowski's counsel was questioned whether *Corbett*, as a Pennsylvania Superior Court decision, was persuasive. (Doc. 52, 18:13-19:5.) After her counsel stated that he believed

6

the decision to be unsound, his explanation mirrored that offered in Grudkowski's brief:

> This court, in *Quinney* and in the *Lobach* case, looking at the policy language, really wasn't persuaded by the way the court interpreted. The punctuation, *Lobach* especially made clear, they disagreed, they called it almost an identical provision. But they would not follow that type of decision. The *Benner* case, it is also an Eastern District case not controlling. Without a controlling case this Court must predict what the Pennsylvania Supreme Court would do with that, your Honor.

(*Id*. at 19:6-14.)[1]

Lastly, Grudkowski sought leave to file a sur-reply brief in opposition to Foremost's motion to dismiss. (Doc. 32.) Although her request was denied, the proposed sur-reply brief attached to her motion did not attack the *Corbett* court's reasoning or its applicability to the post-Act 6 MVFRL. Rather, she argued only that *Corbett* was not binding precedent. (Doc. 32, Ex. A.)

Grudkowski acknowledges that her motion for reconsideration "focuses upon a key issue in the case, namely, the validity of the decision of the Superior Court in St. Paul Mercury Insurance Company v. Corbett, 630 A.2d 28 (Pa. Super. 1993) and its progeny." (Doc. 51, 1.) Grudkowski, however, disputes Foremost's suggestion that her motion raises "new" arguments. Instead, she claims:

> Corbett was discussed in the Memoranda submitted by the parties. At oral argument, the Court specifically inquired as to whether Corbett controlled the outcome. That issue was discussed. No new issues are being raised in this

---

[1] At the close of oral argument, Grudkowski's co-counsel set forth various reasons *Corbett* was wrongly decided in addition to the arguments advanced in her written submission. (Doc. 52, 37:4-39:17.) These arguments, however, did not address Grudkowski's present position that *Corbett* lost its vitality after the enactment of the Act 6 Amendments. Rather, Grudkowski's co-counsel explained why *Corbett* was wrongly decided based largely on his experience and knowledge as counsel for the insurer in that case. Thus, even if the theories regarding the unsoundness of *Corbett* presented at oral argument are not considered "new" here, despite the fact that courts need not consider arguments raised for the first time during oral argument, *see, e.g., Baker v. Hopeman Bros., Inc.*, No. 11-63924, 2012 WL 7761420, at *1 (E.D. Pa. Nov. 9, 2012), Grudkowski did not previously raise her current claim that *Corbett*'s reasoning does not apply to the post-Act 6 MVFRL.

7

Motion.

(*Id*. at 1-2 (footnote omitted).) While Grudkowski concedes that she "did not expand upon the invalidity of Corbett," (*Id*. at 1 n.1,), she explains that:

> At that time, such discussion was unnecessary. In fact, Foremost had conceded that the stacked coverage was illusory under the policy. As a result, Grudkowski focused upon the ramifications of that illusory coverage. Grudkowski never considered that the Court would find illusory coverage (which was sold as real insurance coverage by Foremost) to be legitimate under the MVFRL. As such, Arlene Grudkowski focused on other issues.

(*Id*. at 1 n.1.)

Grudkowski's claim that her motion for reconsideration is not predicated on new arguments is unpersuasive. As detailed above, even though Foremost relied extensively on *Corbett* and its progeny in moving to dismiss the First Amended Class Action Complaint, Grudkowski strategically determined that *Corbett* was worth mentioning in only a footnote (and its progeny was not worth mentioning at all) in her opposition brief. And, in that footnote, Grudkowski did not even provide a citation to the Superior Court's decision. Thus, Grudkowski's statement that *Corbett* "was discussed in the Memoranda submitted by the parties" is only partially true. (Doc. 51, 1.) *Corbett* and its progeny were analyzed and discussed in Foremost's briefs. In Grudkowski's submissions, however, *Corbett* and its progeny were disregarded. While Grudkowski's reasoning for employing this strategy is unknown, her explanation that further "discussion was unnecessary" so she could "focus[ ] on other issues," (Doc. 51, 1 n.1) is puzzling. Insofar as Grudkowski's position now is that the district court decisions cited by Foremost in moving to dismiss the action, i.e., *Perry* and *Mittan*, "just blindly applied the Corbett holding," without any "thought," "analysis," or "detailed reasoning," as "each Court merely lifted a portion of the Corbett decision," (*Id*. at 11), it is striking that Grudkowski did not find it necessary to advance these arguments or otherwise attack the vitality or underpinnings of *Corbett* in opposing the motion to dismiss. Suffice it to say, Grudkowski pursued one strategy in opposing Foremost's motion to

8

dismiss, namely ignoring *Corbett* and its progeny. Now, after having her complaint dismissed, Grudkowski has altered course and sought reconsideration based on arguments unrelated to her prior filings even though they could have been advanced in opposing the motion to dismiss.

Accordingly, Grudkowski's request for reconsideration will be denied because she is impermissibly raising arguments that were available but not presented in the first instance. The Third Circuit has recognized that motions for reconsideration are not meant to "allow a party to 'simply change theories and try again,' thus giving them 'a second bite at the apple.'" *Prusky v. Prudential Ins. Co. of Am.*, 44 F. App'x 545, 548 n.1 (3d Cir. 2002) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). Although a motion for reconsideration is "'a device to relitigate the original issue decided by the district court, and it is used to allege legal error,'" *Dermo v. Isaacson*, No. 11-6520, 2012 WL 4207179, at *1 (E.D. Pa. Sept. 19, 2012) (quoting *Simms v. Phelps*, No. Civ. A. 09–87, 2012 WL 831841, at *1 (D.Del. Mar. 9, 2012)), "it is not a vehicle to raise new arguments or present evidence that could have been raised prior to the initial judgment." *Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012).

Here, if Grudkowski wished to challenge the continuing vitality of *Corbett* and attack *Perry* and *Mittan*'s reliance on *Corbet*, it was incumbent upon her to make these arguments before Foremost's motion to dismiss was decided. *See Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-6961, 1999 WL 285883, at *1 (E.D. Pa. Apr. 26, 1999) ("A motion for reconsideration based upon a supposed clear error of law or manifest injustice should not be based upon what is only a disagreement with the court, nor should it be used to present new arguments which could have been made prior to judgment."); *see also Bapu Corp. v. Choice Hotels Int'l, Inc.*, No. 07-5938, 2012 WL 3259799, at *1 (D. N.J. Aug. 17, 2010) ("this court cannot consider Plaintiffs' statute of limitations argument because it was

raised for the first time in this motion for reconsideration."). Because she waited to raise these theories until now, her "arguments smack of an improper second bite and therefore do not provide a valid basis for reconsideration." *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-cv-4649, 2012 WL 1956787, at *2 (E.D. Pa. May 31, 2012) (citing *Bhatnagar*, 52 F.3d at 1230-31). Simply put, Grudkowski's reconsideration motion "represents precisely the type of procedural maneuvering that is inappropriate in the reconsideration posture." *Lester v. Percudani*, No. 01-CV1182, 2008 WL 4722749, at *8 (M.D. Pa. Oct. 24, 2008) (refusing to neither consider nor reconsider the defendants' tardy arguments). Thus, reconsideration of the March 5, 2013 Memorandum and Order based on Grudkowski's new arguments is not warranted.

In any event, even if Grudkowski's untimely arguments were considered, her motion for reconsideration would nevertheless be denied because she has not established that I committed a clear error of law in relying on *Corbett* and its progeny in granting Foremost's motion to dismiss. Initially, with respect to her statements that *Corbett* was "decided before stacking was codified," (Doc. 42, 4 n.3), and "Section 1738 was not part of the MVFRL at the time Corbett was decided," (*Id*. at 4 n.4), I note that *Corbett* was decided on August 13, 1993, while section 1738 became effective July 1, 1990. *Compare Corbett*, 630 A.2d at 28, *with* 75 Pa. Cons. Stat. Ann. § 1738.

What Grudkowski otherwise appears to argue is that *Corbett* was decided under the pre-Act 6 Amendments to the MVFRL and "only applies to pre-1990 policies." (Doc. 42, 4.) As a result, she opines that the "rationale underlying the Corbett decision has no applicability to the post-Act 6 MVFRL," (*Id*. at 9), since "Corbett was decided under a materially different statute." (*Id*. at 10.) A close examination of the Superior Court's decision, however, indicates that the court was applying the post-Act 6 MVFRL to the policy at issue in that case. *See Corbett*, 630 A.2d at 30.

10

As set forth in the Historical and Statutory Notes to section 1731:

The 1990 amendment rewrote subsec. (a), which formerly read:

"(a) General rule.-- No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage)."

75 Pa. Cons. Stat. Ann. § 1731 historical and statutory notes. Yet, *Corbett* did not rely on this version of section 1731. Rather, it cited section 1731 as amended by Act 6:

**(a) Mandatory offering.**- No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverages). Purchase of uninsured and underinsured motorist coverages is optional.

**(b) Uninsured motorist coverage.**- Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing [a] written rejection form[.]

*Corbett*, 630 A.2d at 30 n.2 (quoting 75 Pa. C.S. § 1731). The court's reliance on the post-Act 6 version of section 1731 is further confirmed by its recognition that "a rejection of uninsured motorist benefits [be] in the form of a written waiver signed by the insured." *Id*. at 30.[2] Similarly, application of the post-Act 6 MVFRL in *Corbett* is indicated by the court's

---

[2] By noting that every motor vehicle liability insurance policy issued in the Commonwealth was required to include both uninsured and underinsured motorist coverage absent a rejection of benefits in the form of a written waiver also signals that *Corbett* applied the post-Act 6 MVFRL in rendering its decision. Specifically, the language in subsections (b) and (c) of section 1731 that "[t]he named insured shall be informed that he may reject [uninsured/underinsured] motorist coverage by signing the following written rejection form" was added by the Act 6 Amendments. *See* 75 Pa. Cons. Stat. Ann. § 1731(b),(c) historical and statutory notes ("The 1990 amendment also, in subsecs. (b) and (c), added the second sentences and rejection forms.").

11

reference to the "mandatory offering" of uninsured motorist coverage. *Id*. at 30, 32. Lastly, by citing section 1733(a)(1), the *Corbett* court also demonstrated that it was construing the post-Act 6 MVFRL since the text in section 1733 was not designated as subsection (a) until the MVFRL was amended by Act 6. *See* 75 Pa. Cons. Stat. Ann. § 1733 ("The 1990 amendment designated the existing text as subsec. (a) and added subsec. (b).").

Therefore, the distinction between antique and personal use automobile insurance policies recognized by the *Corbett* court was found in its construction and interpretation of the post-Act 6 MVFRL. While *Corbett* did not cite section 1738 in its decision, the stacking provision relied on by Grudkowski, the version of the MVFRL construed by the Superior Court included section 1738. Thus, because *Corbett* applied the post-Act 6 MVFRL, Grudkowski's claims that "the restrictions sanctioned by Corbett were no longer valid under the post-Act 6 MVFRL," (Doc. 42, 9), and "[t]he rationale of Corbett retained no vitality after the Act 6 Amendments to the MVFRL," (*id*. at 10), must be rejected. As such, even if Grudkowski's untimely arguments are considered, I did not commit a clear error of law in applying *Corbett* to the antique automobile policies at issue in this case.

### IV. Conclusion

For the above stated reasons, Grudkowski's motion for reconsideration will be denied.

An appropriate order follows.

July 1, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

12